## George L. Zink et al. v. Wells, Fargo & Co.

1. AMENDMENTS—*Changes in the Form of Action.*—There is no reason why a person who has brought suit in replevin and been unable to find the property should be denied the right to change his action to assumpsit.

2. PRACTICE—*When Depositions Should be Objected to.*—Where a commissioner to take the deposition of a witness has improperly refused to allow one of the parties to cross-examine such witness, the court may properly deny a motion to suppress the deposition and order a new commission to issue to allow the party aggrieved an opportunity to examine the witness.

3. STOLEN MONEY—*Transfer of Title to.*—A thief can not, by written order, assign stolen money in consideration of services to be performed in the future and thereby give to the assignee a title that will prevail over that of the true owner.

4. ASSUMPSIT—*For Money Had and Received—When it Will Lie.*—An action of assumpsit for money had and received will lie whenever one person has received money which in justice belongs to another and which in justice and right should be returned, and under this rule assumpsit may be maintained to recover the value of money that has been stolen.

Assumpsit.—Appeal from the Circuit Court of Montgomery County; the Hon. JACOB FOUKE, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 2, 1897.

HOWETT & JETT, attorneys for appellants.

In general whenever one's property has been wrongfully taken from him, he has his election to proceed against the wrongdoer in replevin, trespass or trover, or he may waive the tort and sue in assumpsit for the value of the property. These two classes of actions are based upon inconsistent theories. The first proceeds upon the theory that the title to the property has never passed from the plaintiff; the last proceeds upon the assumption of a sale of the property, whereby the title passed to the defendant. The remedies are not concurrent and are based on inconsistent rights. Whenever the law supplies to a party two or more methods of redress in a given case, based upon inconsistent theories, the party is put to his election, and his choice of either is a

bar to his resort to the other. 28 Am. & Eng. Ency. of Law, 570; 7 Ency. of P. and P., 361.

Here appellee first brought an action in replevin, adding a count in trover. This was an election by appellee between inconsistent remedies and was conclusive upon it, and appellee should not thereafter have been permitted, over objection of appellants, to amend its form of action and declare upon a cause of action that was wholly inconsistent with the election first made. The special plea, to which the court sustained a demurrer, set out this election of appellee to proceed in tort and denied the right of appellee thereafter to proceed on account of the same cause of action, in assumpsit. The reason for this is that when it becomes necessary to choose between inconsistent rights and remedies—to which election appellee was put when about to bring suit—the election, when made, with a knowledge of all the facts, will be final and can not be reconsidered, even when no injury has been done by the choice or would result from setting it aside. Terry v. Munger, 121 N. Y. 161; Conrow v. Little, 115 N. Y. 387; Harms v. Stier, 51 Ill. App. 234; Carper v. Crowl, 149 Ill. 465; Brumbach v. Flower, 20 Ill. App. 219.

There can be no claim in this case that appellants received the money in question for the use of the plaintiff. The facts rebut any such presumption. They received it as their money and applied it upon their contract with the party then in possession of it. As between such party and plaintiff, it is true, plaintiff was entitled to recover the money, but we submit that when appellants received the money as their own and for their own use, an action in assumpsit can not be maintained against them by plaintiff for the same. Town of Rushville v. President, etc., of Rushville, 39 Ill. App. 503; Trumbull v. Campbell, 3 Gilm. 502; Hall v. Carpen, 27 Ill. 386.

The money in question was wrongfully taken from appellee by Gorman. Appellee might have maintained trespass, trover or replevin against him, or it might have waived the wrongful taking and sued him in assumpsit for the value of

the money so taken. But the moment it elected to bring an action in assumpsit against him, it thereby instantly confirmed or ratified the act of taking and acknowledged such taking to have been lawful; such waiver of tort would have made the money the money of Gorman. Cooley on Torts, 92; Bank of Beloit v. Beale, 34 N. Y. 473; Terry v. Munger, 121 N. Y. 161; 1 Selwyn's Nisi Prius, 81.

As a general rule the transfer or disposal by the thief of stolen property may be disavowed by the true owner and the property or the value thereof recovered in a proper action against a *bona fide* purchaser thereof; but as to money the rule is otherwise, and where a party has received money *bona fide* in the course of his business, it becomes his property and he has good title thereto against its owner from whom it has been stolen. Miller v. Race, 1 Burr. 452; S. C., 1 Smith Leading Cases, 516; Jones v. Nellis, 41 Ill. 482; Shipley v. Carroll, 45 Ill. 285; Spooner v. Holmes, 102 Mass. 503; Evertson v. National Bank of Newport, 66 N. Y. 14; Bay v. Coddington, 5 Johns. Ch. 54; Coddington v. Bay, 20 Johns. 637; Burson v. Huntington, 21 Mich. 415 (437); 1 Addison on Torts, 500; 1 Hilliard on Torts, 51.

Unless the party receiving the money has actual notice, at that very moment, the holder has no title, or is guilty of gross negligence, he thereafter owns the money against all the world. Notice at any time thereafter, however close or remote, does not affect his title if he gave value. That is to say, to defeat the title of a holder for value, he must, when taking the money, have actual notice, or the facts and circumstances must be such as to show *mala fides* on his part in taking with notice of the defective title. It is not sufficient to show that a prudent man would have been put upon inquiry, or that he was negligent, or did not exert a proper degree of caution. Dutchess Co. Mut. Ins. Co. v. Hachfield, 73 N. Y. 226; Miller v. Race, *supra;* see also "Transfer of Cash, Bank Bills, Checks," etc., in note to Williams v. Merle, 25 Am. Dec. 604.

A holder of money for value is one who pays out property, satisfies an existing indebtedness, incurs a new respon-

sibility in consequence of the transfer, or where a responsibility is incurred upon the strength or credit of the money. In either of these cases, he who takes the money takes it for value, and is a holder for value. Bay v. Coddington, 5 Johns. Ch. 54; Coddington v. Bay, 20 Johns. 637.

LANE & COOPER, attorneys for appellee.

It is a statutory right of a party to change the form of the action, and this practice has been indorsed by our Appellate and Supreme Courts. Statute of Amendments and Jeofails, Sec. 1; Practice Act, Rev. Stat., Chap. 110, Sec. 24; Garrity v. Hamburger Co., 136 Ill. 509.

"Objections to depositions must be made before the trial, otherwise they will be considered waived." Kimball v. Cook, 1 Gilm. 423.

It has been repeatedly held that objections to depositions which might be obviated by issuing a new commission and re-examining the witness can not be heard after the case is called for trial. Kassing v. Mortimer, 80 Ill. 602; Carter v. Carter, 37 Ill. App. 228; Frink v. McClung, 4 Gilm. 577; Webb v. Alton, etc., Co., 5 Gilm. 225; Town of Sheldon v. Burry, 39 Ill. App. 154; Kuhl v. Illinois Staats Zeitung Co., 20 Ill. App. 658.

In the case at bar no money was paid or services rendered by appellants when they were notified that the money was stolen and was the property of appellee. They were not *bona fide* holders of this money received in the usual course of business. To constitute one a *bona fide* purchaser he must pay as well as purchase without notice. Thomas v. Stone, Walker Ch. (Mich.) 117; Warner v. Whittaker, 6 Mich. 133.

"It is a well recognized doctrine that the action for money had and received, may be maintained whenever the defendant has obtained money of the plaintiff which in equity and good conscience he has no right to retain." Taylor v. Taylor, 20 Ill. 650; Gottschalk v. Smith, 54 Ill. App. 343.

It is also the law that a party may waive the tort, and charge the wrongdoer in assumpsit on the common counts

as for money had and received. City of Elgin v. Joslyn, 136 Ill. 532; Shober, etc., Co. v. Schedler, 63 Ill. App. 48.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

On the 1st of April, 1896, a man by the name of Conroy Gorman and two others robbed an express car near Lebanon, Mo., and, after blowing open an iron safe, took from the possession of the agent of Wells, Fargo & Company $800. He came to Litchfield, Ill., a few days afterward, and while the city marshal of that place was attempting to arrest him for some minor offense he dropped $693 of the money, which he had in a tobacco pouch, by the side of a rail fence. There it was found by a boy two days afterward and was taken by the boy's father to the First National Bank of Litchfield, where it was left as a special deposit. Notice of the finding of the money was published at once in a Litchfield paper. On the 11th of April Gorman made an affidavit claiming to be the owner of the money and delivered to George L. Zink and David R. Kinder, his attorneys, an order on the bank to deliver it to Zink and Kinder, to whom he had made an assignment of the money for legal services to be performed. On a presentation of the affidavit and order the bank delivered the pouch and money to Zink, who placed them in his private lock box in the bank.

The agents of Wells, Fargo & Company, after becoming satisfied that the money was part of that taken by the robbers, and that Gorman was one of them, made demand on Zink for the money, and on his refusal to deliver it, sued out a writ of replevin. On the 21st of April, when the sheriff was about to break open the private box of Zink, Zink unlocked it, showed that the money was not there, and stated that he had taken it out some three days before. The writ was returned to the next term of court, showing service on the defendants, but a failure to get the money. The declaration was in replevin, with a count in trover, and the First National Bank was included as a defendant.

After dismissing as to the bank, the plaintiff obtained leave of the court to change the form of action from replevin to assumpsit and filed a declaration in assumpsit. To that declaration the defendants filed the general issue and a special plea, setting up that as the plaintiff had proceeded first in replevin it could not change its form of action and proceed in assumpsit. To the special plea a demurrer was sustained and the cause was tried by the court without a jury upon the issue raised by the plea of non-assumpsit. The court rendered judgment in favor of the plaintiff for $693.

To the contention of the appellants that the Circuit Court erred in allowing the amendment changing the form of action, and in sustaining the demurrer to defendant's special plea, it is sufficient to say that ample authority to allow such amendment is given by the statute. (Sec. 1, Chap. 7 (Amendments and Jeofails) and Sec. 23, Chap. 110 (Practice), Rev. Stat.) There is no more reason in denying a party, who has sued in replevin and been unable to find the property, the right to change his action to assumpsit than there is in refusing to allow him to change from assumpsit to debt or from assumpsit to case.

At the November term, 1896, appellants moved to suppress the deposition of Conroy Gorman, taken in St. Louis before Harry L. Christie, a commissioner appointed for that purpose. The motion was supported by the affidavit of one of appellants, showing that at the time of the taking of the deposition they were denied a private interview with Gorman, and that after the examination of the witness had closed and counsel for appellee had held a whispered conversation with the witness and then re-examined him they were denied the right to cross-examine. The witness was at the time a prisoner in the St. Louis jail. He was being held by the authorities of Missouri to answer to the charge of train robbery, and a private interview with him was denied appellants by the guard having him in charge unless it could be had at the jail. The proofs show that at the conclusion of the examination in chief appellants declined to

cross-examine, that counsel for appellee did hold a whispered conversation with the witness afterward and then re-examined him, and that when appellants asked leave to cross-examine it was denied to them. We can not, of course, sanction that action of the commissioner. Neither did the Circuit Court. He did not suppress the deposition, however, but ordered a new commission to issue so that appellants could have an opportunity to cross-examine Gorman. We think such action rested within the sound discretion of the court. By it appellants were given full opportunity to exercise the right which had been denied them by the commissioner at St. Louis. Having failed to avail themselves of that opportunity there was no just ground for objecting to the deposition on the trial.

The facts in this case show a clear right in appellee to recover. Appellants can not be regarded in the light of innocent holders of the money. Before the money was removed from the bank they were notified that it was the property of appellee, and had been stolen from it by Gorman, the party through whom they now claim title. They had paid nothing for it and at that time had performed no service for Gorman that would entitle them to any part of it. A thief can not by written order assign stolen money in consideration of services to be performed in the future and thereby give to the assignee a title that will prevail over that of the true owner. That he can is the head and front of appellant's contention in this case.

Embodied in various propositions of law submitted to the court, and refused, was the idea that where a party who has been deprived of his property by theft waives the tort and sues in assumpsit he so far confirms the wrong-doer's acts that he can not deny that he came rightfully into possession of the property. In other words, although Gorman stole the money and appellee could have maintained replevin or trover to recover it, yet having elected to sue in assumpsit, at the instant of exercising such election it ratified the act of taking and acknowledged that the theft was lawful.

Without going into a detailed discussion of the propositions of law which were refused by the court we will say

that the court could not have done otherwise than refuse them if he entertained the view that assumpsit may be maintained to recover the value of money that has been stolen. It is a well recognized doctrine in this State that assumpsit will lie for money had and received wherever one has obtained the money of another which it is inequitable or unjust for him to retain. The latest expression of our Supreme Court upon this line is as follows:

" An action for money had and received will lie whenever one person has received money which in justice belongs to another, and which in justice and right should be returned. The scope of the action has been enlarged until it embraces a great variety of cases, the usual test being, does the money in justice belong to the plaintiff, and has the defendant received the money and should he in justice and right return it to the plaintiff?" Wilson v. Turner, 164 Ill. 398.

We see no reason for reversing the judgment. Judgment affirmed.